**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PATRICIA A. MATHIS,

        Plaintiff,

vs.                                   Case No. 3:06-cv-816-J-MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

        Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**

     **THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for Social Security benefits for the time period from

April 29, 1997 through December 31, 2002.[1]  The Court has thoroughly reviewed the

record, the briefs, and the applicable law.  For the reasons set forth herein, the

Commissioner's decision is **REVERSED** and the matter **REMANDED** for proceedings

not inconsistent with this opinion.

**I.**    **PROCEDURAL HISTORY**

     Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") on October 2, 2003, alleging an inability to work since April 29,1997.

(Tr. 58-60).  The Social Security Administration ("SSA") denied this application initially

and on reconsideration.  (Tr. 27-28, 29-30).  Plaintiff then requested and received a

_____

    [1]  The parties have consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Doc. 12).

hearing before an Administrative Law Judge (the "ALJ").  (Tr. 41, 354-386).  On January 24, 2006, the ALJ issued a decision concluding Plaintiff is not disabled within the meaning of the Social Security Act.  (Tr. 13-25).  Plaintiff filed a request for review by the Appeals Council, and on July 14, 2006, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. 4-6).  Plaintiff timely filed her Complaint in the U.S. District Court on September 14, 2006.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.      <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since April 29, 1997, due to pain in her right shoulder and right side of her neck which radiates into both arms, headaches, numbness in her hands, muscle spasms, lower back pain radiating into her buttocks and legs, anxiety, and depression.  (Tr. 79, 133).

### B.      <u>Summary of Evidence Before the ALJ</u>

Plaintiff was 42 years of age at the time the ALJ conducted the administrative hearing.  (Tr. 17).  She has a tenth grade education and her past work experience includes employment as a bus driver and cleaner.  <u>Id.</u>  Plaintiff alleges she has been unable to work since April 29, 1997, due to several incidents which occurred while she was working as a bus driver.  Evidently, sometime in 1995, a 120 pound Rottweiler bounded onto the bus Plaintiff was driving and when Plaintiff reached for the door to let the dog out, she felt extreme pain shoot through her right shoulder.  (Tr. 219).  She underwent a rotator cuff repair and was functioning fairly well until May 1997 when she

2

was again driving a bus, this time through a flood, and the door sung open causing Plaintiff to grip the door in an effort to keep it closed.  Id.  Again, Plaintiff experienced extreme pain.  Id.  She was diagnosed with a pulled supraspinatus ligament as well as two disc herniations on her cervical spine.  Id.  Plaintiff now complains of pain throughout her neck, shoulders, arms, and back.

### 1.    Evidence of Plaintiff's Medical History

Plaintiff's medical history is set forth in the ALJ's decision and the parties' briefs. By way of summary,[2] Plaintiff was seen at the Orange Park Surgery Center after she injured her right shoulder while driving a school bus.  (Tr. 155).  She was diagnosed with right shoulder impingement syndrome and underwent a right shoulder arthroscopy with decompression on September 28, 1995.  (Tr. 155-56).  She was discharged in good condition on the same date.  (Tr. 163).

Plaintiff was treated by John S. Boggs, M.D. on April 16, 1999 for persistent pain in her neck and right shoulder which radiated down her arms.  (Tr. 194).  Dr. Boggs noted that Plaintiff had undergone physical therapy and multiple injections to the shoulder, both of which improved things, but did not alleviate her condition.  Id.  An MRI done in February 1999, showed a small defect persistent at C5-6, with spur formation. Id.  Dr. Boggs opined the MRI findings suggest the possibility of residual movement at the C5-6 level.  Id.  On examination, Plaintiff had limited movement in extension, but full range of motion of the right shoulder without limitation.  Id.  Dr. Boggs concluded Plaintiff had residual pain syndrome on the right side of her neck and right shoulder.  Id.

---

[2] This summary is limited to the evidence relevant to the issues on appeal.

Dr. Boggs referred Plaintiff to Stephen Broadman, D.O. for an examination of her cervical spine.  On May 10, 1999, Dr. Boadman noted a reversal of Plaintiff's normal cervical lordosis – representing myofascial spasm.  (Tr. 193).  He further noted an anterior fusion at the C5-C6 level, but determined it was intact.  Id.  He determined Plaintiff had mild restriction in hyperflexion, but otherwise concluded the study was normal.  Id.

 On June 16, 1999, Plaintiff returned to Dr. Boggs' office, complaining of intractable pain in her neck.   (Tr. 191).  Dr. Boggs provided Plaintiff facet blocks which only provided minimal relief.  Id.  Although he found no evidence of a remaining surgical problem, he recommended Plaintiff be referred to a pain management specialist and opined Plaintiff was unemployable at that time as a result of her severe pain and inability to deal with such pain.  Id.

After receiving multiple injections from the Pain Center, Plaintiff returned to see Dr. Boggs on July 14, 1999, complaining of cervical pain, pain in her interscapular area, and pain radiating down her left arm.  (Tr. 190).  On August 30, 1999, Plaintiff underwent a CT Spine Cervical and a Myelogram at Baptist Medical Center.  The Myelogram showed marked disk and end plate degenerative changes at L4/5 and satisfactory fusion at C5/6 with a residual spur on the right at C5/6.  (Tr. 187-88).  Similarly, the CT of Plaintiff's spine also indicated a spur on the right at C5/6 with some associated soft tissue.  (Tr. 185).

Plaintiff was seen by Agripino A. Javier, M.D., a family practice physician from December 2000 through June 2001.  (Tr. 224-236).  Over the course of Plaintiff's

4

treatment with Dr. Javier, she complained of intense pain in her shoulder, back and buttocks.  Id.

On March 12, 2001, Jawed Hussain, M.D., a pain management specialist with the Institute of Pain Management, P.A., recommended Plaintiff have a CT scan of the neck and further recommended injective treatment with Claudio E. Vincenty, M.D.  (Tr. 223).  Plaintiff began treatment with Dr. Vincenty, a pain management specialist, in April 2001, after an MRI confirmed Plaintiff suffered from cervical spondylosis.  (Tr. 219-223). Plaintiff complained to Dr. Vincenty that she was having increased neck pain.  Dr Vincenty noted Plaintiff had decreased strength on her right side, decreased range of motion when she moved from side to side, that extension exacerbated her pain, and that she had tenderness on her trapezius.  (Tr. 219).   Dr. Vincenty performed a series of steroid injections to help alleviate her pain.  (Tr. 201-220).  The injections provided significant, albeit temporary, relief to Plaintiff.  (Tr. 224, 226, 302, and 301).

On July 10, 2001, Plaintiff returned to Dr. Hussain, due to continued pain in her neck and shoulder.  (Tr. 303).  Dr. Hussain noted that although the injective treatments initially provided Plaintiff significant relief, they were short lived.  (Tr. 304).  Dr. Hussain further noted Plaintiff complained of increased pain and limited motion of the cervical spine.  Id.   Plaintiff continued treatment with Dr. Hussain from October 2001 through December 2003.  During this period, Plaintiff continued to complain of pain, describing it as cramping, burning, tender, miserable, piercing, distressing, and horrible, and on average a 6 or 7 on a 10 point scale.  E.g., Tr. 288-298;302.  Dr. Hussain gave Plaintiff additional trigger point injections in an effort to relieve her pain, but Plaintiff's relief remained short lived.   (Tr. 299).  Dr. Hussain diagnosed Plaintiff as having: chronic pain

5

syndrome; neck pain with cervicalgia; right shoulder pain with status post repair of rotator cuff muscle on the right; history of anterior cervical fusion; status post lumbar laminectomy syndrome; and myofascial pain syndrom.  (Docs. 287-300).

On April 2, 2002, Dr. Hussain evaluated Plaintiff's residual functional capacity ("RFC").  (Tr. 284-86).   He determined Plaintiff was able to: carry 10 pounds maximum and 10 pounds frequently; stand and/or walk for 2 hours during an 8 hour work day; sit for 2 hours in an 8 hour work day, and alternate between sitting and standing for 2 hours without having to lie down.  (Tr. 284).  He also noted that she was limited to only occasionally being able to bend, squat, and push and/or pull with her arms and legs.  (Tr. 284).  Dr. Hussain opined that Plaintiff was severely limited around unprotected heights, moving machinery, changes in temperature, and driving automotive equipment.  (Tr. 285).  He further opined that Plaintiff's limitations fluctuated and cited his previous RFC evaluation as support for this statement (Tr. 285); notably, however, Dr. Hussain's previous RFC evaluation is not contained in the record.  Dr. Hussain also confirmed that he had seen objective evidence of Plaintiff's pain (Tr. 285), and that it was occasionally debilitating, with episodes of onset occurring with increased stress.  (Tr. 286).

The record contains another RFC evaluation of Plaintiff done by Dr. Hussain, covering a period from September 2005 through September 2006.[3]  (Tr. 351-353).  In this evaluation, Dr. Hussain opined Plaintiff was able to: sit and stand for less than 2 hours at a time; walk for less than 30 minutes at a time; sit for a total of 2 hours in an 8 hour day; stand for a total of 1 hour in an 8 hour day; never lift any amount of weight,

---

[3] Notably, there are no records from Dr. Hussain's office from 2004 through 2006.

6

but can carry 0-5 pounds frequently and 6-10 pounds occasionally; only occasionally perform motions such as push/pulling, fine manipulating, and repetitive motions; never squat, crawl, climb or reach overhead.  (Tr. 351-53).  Dr. Hussain further reported Plaintiff may never participate in activities around unprotected heights, moving machinery, environments which expose her to changes in temperature or humidity, or environments with dust, fumes and gases.  (Tr. 351-53).  Finally, Dr. Hussain opined that based on his medical findings, he did not believe Plaintiff's complaints of pain were excessive.  (Tr. 353).  Based on this evaluation, Dr. Hussain determined Plaintiff was not capable of working a full 8 hour work day.

On March 27, 2001, Plaintiff was referred to HealthSouth for the purpose of determining her physical work capabilities.  (Tr. 196-197).  An authorized evaluator examined Plaintiff for worker's compensation purposes and determined that Plaintiff was capable of physically functioning in the medium category of work as defined by the U.S. Department of Labor.   (Tr. 197).  The evaluator, however, specified that Plaintiff was referred only to evaluate her physical capabilities, and that Plaintiff was referred back to Dr. Hussain for final work restrictions.  Id.

In January 2002, Plaintiff sought treatment at Clay County Behavioral Clinic for depression.  (Tr. 237-245).  After her initial evaluation, Plaintiff was diagnosed with adjustment disorder with depressed mood.  (Tr. 243).  She reported having constant pain and that she was unable to deal with her emotions.  (Tr. 239).  She received individual therapy with the goal of learning how to verbalize her feelings relating to pain management and learning effective techniques for regulating her emotional skills and coping.  (Tr. 244).  In July 2002, Plaintiff was discharged from Clay County Behavioral

Health Center after successfully meeting her goals. (Tr. 238).

Two clinical psychologists filled out Psychiatric Review Technique Forms on Plaintiff.  Michael Zelenka, Ph. D. reported, on March 11, 2004, that Plaintiff had an affective disorder, i.e, adjustment disorder, that was not severe.  (Tr. 328-341).  Susan Conley, Ph. D., opined on May 13, 2004 that there was insufficient evidence to determine Plaintiff's medical disposition.  (Tr. 314-327).

On December 19, 2003, a state agency physician completed a physical residual functional capacity assessment on Plaintiff (Tr. 305-313), diagnosing her with right shoulder decompression and chronic pain syndrome (Tr. 306).  He then determined she was capable of: lifting 10 pounds occasionally and less than 10 pounds frequently; standing or walking at least 2 hours in an 8 hour day; sitting about 6 hours in an 8 hour day, and unlimited pushing or pulling.  (Tr. 307). She had occasional limitations in all postures and was limited in reaching overhead.  (Tr. 308-09).

On May 19, 2004, another state agency physician completed a second physical residual functional capacity assessment on Plaintiff (Tr. 342-349), diagnosing her with neck and right shoulder pain and lumbar laminectomy.  (Tr. 342).  His findings were substantially similar to the previous state agency physician's findings, but he further opined that her symptoms and complaints seem to exceed the objective findings in the record.  (Tr. 347).

### 2.      Plaintiff's Testimony at Hearing

Plaintiff testified before the ALJ on November 15, 2005.  (Tr. 354-36).  She stated that she has had eight surgeries since 1997 and that she experiences pain from the minute she wakes up in the morning.  (Tr. 364).  She further stated her pain causes

numbness and muscle spasms in her whole body and that her pain was the same in 2005 as it was in 2002.  (Tr. 365-66).  On average, she estimated that her pain was a level 7 out of 10.   (Tr. 366).  Plaintiff next testified that she continued to be treated by Dr. Hussain and that she was taking various medications to help with pain, sleep, nausea, and constipation.  (Tr. 367-68).  She told the ALJ that medications cause her to experience sleepiness, nausea, constipation, and shortness of breath.  (Tr. 368).

Plaintiff's daily activities consisted of napping, washing a load of laundry, watering plants on her porch, and watching television.  (Tr. 370 & 372).   She also stated she has a dog, but since the dog is an outside dog, she doesn't require any special care.  (Tr. 371).  Finally, Plaintiff noted that she required position changes frequently because of her back and neck injury.  (Tr. 371).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § § 404.1520, 416.920.  First, if Plaintiff is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if Plaintiff does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if Plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

9

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if Plaintiff's impairments do not prevent her

from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if

Plaintiff's impairments (considering her residual functional capacity, age, education, and

past work) prevent her from doing other work that exists in the national economy, then

she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v.

Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability

requirements of the Act and was insured for benefits through December 31, 2002.  (Tr.

17, 24).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since her alleged onset date.  (Tr. 17, 24).  At steps two and three, the ALJ

found Plaintiff has "degenerative disease of the lumbar and cervical spine, status post

cervical fusion, status post arthroscopic decompression of the right shoulder, and

myofascial pain disorder, impairments which are 'severe' within the meaning of the

Regulations but not 'severe' enough to meet or medically equal, either singly or in

combination, one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4."

(Tr. 18, 24).

The ALJ next opined Plaintiff lacked credibility and despite the opinion of Dr.

Hussain, Plaintiff's treating physician, that Plaintiff was unable to work a full eight-hour

day, the ALJ found Plaintiff's impairments would not have prevented her from

performing a significant range of sedentary exertional level work during her alleged

period of disability.  (Tr. 18-19).  The ALJ discredited Dr. Hussain's opinion, as

10

inconsistent with the remaining medical evidence of record and further found Plaintiff's activities of daily living were contradictory to her claims of disability.  (Tr. 18, 19).

The ALJ determined Plaintiff had the RFC for a range of sedentary work on a sustained basis and specifically, that at all times relevant to this decision, Plaintiff is/was able to:

> lift and/or carry, and push/pull 10 pounds occasionally and less than 10 pounds frequently.  She can walk and/or stand for approximately two hours per eight-hour workday.  She can sit for six hours out of an eight-hour workday with a maximum of one hour at a time sitting or being on her feet.  She is limited to no more than occasional overhead reaching with the upper extremities.  However, she can use here arms and hands for normal grasping, holding and turning objects without limitation.  She can perform occasional climbing, balancing, stooping, kneeling, crouching and crawling.  She has environmental limitations concerning working at heights and exposure to dangerous or moving machinery.  She has no significant mental limitations.

(Tr. 22).

Because the ALJ found Plaintiff capable of performing a range of sedentary work, but not the full range, the ALJ utilized a vocational expert ("VE") to testify as to whether Plaintiff was able to return to her past relevant work or perform other work. Based on the VE's testimony, at step 4, the ALJ found Plaintiff incapable of performing her past relevant work.  (Tr. 22).  At step 5, the ALJ found that Plaintiff could perform sedentary cutter/paster press clipping jobs, sedentary leaf tier jobs, and sedentary surveillance system monitor jobs, and that such jobs existed in significant numbers in both Florida and the national economy.  (Tr. 23).  Thus, the ALJ found Plaintiff not disabled.  (Tr. 23, 24).

### III.     THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla -- i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995), <u>citing</u> <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### IV.     ANALYSIS

Plaintiff argues four issues on appeal.  First, Plaintiff asserts the Commissioner erred by failing to conclude Plaintiff's depression was severe.  (Doc. 17, pp. 10-11).

Second, she contends the Commissioner erred by improperly equating Plaintiff's activities of daily living with an ability to perform substantial gainful activity and to discredit her pain testimony.  Id. at 11-14.  Third, Plaintiff argues the Commissioner erred when she posed incomplete hypothetical questions to the VE.  Id. at 14-18. Finally, Plaintiff alleges the Commissioner erred when she accorded improper weight to the opinion of Plaintiff's treating physician, Dr. Hussain.  Id. at 18-19.  As such, Plaintiff contends the Commissioner's decision is not supported by substantial evidence as required by 42 U.S.C. § 405(g).  Id.  The Court will now address Plaintiff's arguments, although it will address them in a different order than that raised by Plaintiff.

A.    Mental Impairment Analysis

In filing for disability benefits, Plaintiff stated she was depressed and experienced anxiety as a result of her physical impairments.  (Tr. 38, 100, 133, 139).  From January 15, 2002 through July 15, 2002, Plaintiff sought the help of a mental health counselor at Clay County Behavioral Health Center.  (Tr. 238-245).  Plaintiff was diagnosed with adjustment disorder with depressed mood on her initial visit to the Clay County Behavioral Health Center and was given a GAF score of 55.  (Tr. 238, 243).  Only six months later, however, Plaintiff was discharged as a patient at the Clay County Behavioral Center because she successfully completed all of the goals in her treatment plan.  (Tr. 238).  At that time, Plaintiff was diagnosed with a GAF of 65.[4]  (Tr. 238).  The

---

[4] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994). A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers or co-workers). Id. at 32.  A GAF score of 61-70 indicates some

Clay County Behavioral Health Center records are the only medical evidence of record relating to Plaintiff's treatment of her mental impairments. (Tr. 238-245).

Plaintiff argues that the ALJ erred when she concluded Plaintiff's psychological impairment of adjustment disorder with depressed mood was not severe.  (Doc. 17, p. 10).  Alternatively, Plaintiff argues that the ALJ erred because she failed to consider the combined effect of her severe and non-severe impairments.  Id. at 11.  These issues implicate the ALJ's determination at step two of the five-step evaluation process.

At step two, the ALJ is called upon to determine whether a claimant's impairments are severe.  By definition, this is a "threshold inquiry."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  In Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit held that "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Brady, 724 F.2d at 920.  As the McDaniel court noted, the analysis at step two allows "only claims based on the most trivial impairments to be rejected."  McDaniel, 800 F.2d at 1031.  "Claimant need show only that her impairment is not so slight and its effect is not so minimal."  McDaniel, 800 F.2d at 1031.  However, the Eleventh Circuit has elaborated by noting: "'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or

---

mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household).  Id.

normality." <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986); <u>see</u> <u>also</u> 20

C.F.R. § 404.1521(a) (2003) ("An impairment or combination of impairments is not

severe if it does not significantly limit your physical or mental ability to do basic work

activities.").

Plaintiff bears the burden at step two to present evidence that she has a

medically severe impairment or combination of impairments and, to meet that burden,

she must furnish medical and other evidence in support of her claim.  <u>See</u> <u>Yuckert</u>, 482

U.S. at 146 & n. 5, 107 S.Ct. at 2293-94.  Moreover, the regulations state:

> [t]he evaluation of disability on the basis of mental disorders requires
> documentation of a medically determinable impairment(s), consideration of the degree of limitat
> on your ability to work, and consideration of whether these limitations have lasted or are
> expected to last for a continuous period of at least 12 months.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(A).  As noted above, the only evidence in

the record regarding Plaintiff's mental impairment demonstrates that Plaintiff was

discharged from Clay County Behavioral Health Center in July 2002 because she

successfully met all of her goals.<sup>5</sup>  This evidence indicates that Plaintiff had successfully

treated her adjustment disorder after only six months of seeing a mental health

counselor.  Additionally, during the administrative hearing, Plaintiff's counsel questioned

Plaintiff about which of her impairments prevent her from working  (Tr. 254-386) and

notably, Plaintiff never mentioned that she suffered from any mental impairments.

Finally, two Psychiatric Review Technique forms support the ALJ's finding that

Plaintiff's mental impairments were not severe.  On March 11, 2004, Dr. Zelenka, a

---

[5] There is a brief reference to Plaintiff being treated by a psychiatrist before she sought
treatment from Clay County Behavioral Center (Tr. 239); however, any such medical records are
not contained in Plaintiff's file.

clinical psychologist, opined Plaintiff's affective disorder was not severe.  (Tr. 328).  On

May 13, 2004, a second clinical psychologist, Dr. Conley, indicated there was

insufficient evidence of Plaintiff's mental disorder.  (Tr. 314).

Plaintiff has not met her burden of showing her mental impairment is more than a

slight abnormality with more than a minimal effect on her ability to perform basic work

activities.  The decision of the ALJ that Plaintiff's mental impairments were not severe is

supported by substantial evidence.

Plaintiff, however, also argues the ALJ erred by not considering the combined

effect of both her severe and non-severe impairments on her ability to work.  (Doc. 17,

p. 11).   In determining whether a claimant's physical and mental impairments are

sufficiently severe, the ALJ must consider the combined effect of all of the claimant's

impairments, and must consider any medically severe combination of impairments

throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ

must evaluate a disability claimant as a whole person, and not in the abstract as having

severe hypothetical and isolated illnesses.  Davis v. Shalala, 985 F.2d 528, 534 (11th

Cir. 1993).  Accordingly, the ALJ must make specific and well-articulated findings as to

the effect of the combination of impairments when determining whether an individual is

disabled.  Id.; see also Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (it was

clear the ALJ considered the claimant's impairments in combination when he stated,

"based upon a thorough consideration of all evidence, the ALJ concludes that the

appellant is not suffering from any impairment, or combination of impairments of

sufficient severity to prevent him from engaging in any substantial gainful activity for a

period of at least 12 continuous months"); Jones v. Dep't of Health & Human Servs.,

941 F.2d 1529, 1533 (11th Cir. 1991) (ALJ properly considered impairment in combination, when he stated, "while Jones 'has severe residuals of an injury to the left heel and multiple surgeries on that area,' he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4").

In this case, the ALJ used language similar to that found acceptable in <u>Jones</u> and <u>Wheeler</u>.[6]  On these facts, the undersigned finds the ALJ properly considered Plaintiff's impairments in combination.  <u>See</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (determination that claimant did not have an impairment or combination of impairments that met or equaled the listing demonstrated that ALJ considered the combined effects of claimant's impairments).

## B.    The Pain Analysis

Plaintiff's medical records indicate she has complained of pain in her shoulder, neck, arms, and back since her alleged onset of disability.  Additionally, during the hearing, Plaintiff testified that her pain prevents her from working.  (Tr. 365).  She explained she has pain which radiates from her neck through her whole body.  <u>Id.</u> Specifically, she testified, "I wake up, I step on my feet, and it's like my heels hurt, and it goes straight to the head.  I mean, it's just the whole body.  I've got numbness.  I've got muscle spasms.  Like right now[,] my [sic] back's killing me."  (Tr. 365).

Plaintiff also told the ALJ that she experienced muscle spasms and severe pain

---

[6]  Specifically, the ALJ found several of Plaintiff's impairments were "'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, **either singly or in combination** to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 18) (emphasis added).

back in 2002 and before, and that her condition at the time of the hearing was no different than it was in 2002. (Tr. 366). When questioned about how often she experiences pain, Plaintiff responded she experiences pain everyday, 24 hours a day, in one place or another. Id. Plaintiff rated her pain in 2002 on a scale from 1 to 10 at about level 7. Id. Plaintiff further noted she takes a Duragesic patch for pain and Soma for her muscle spasms. (Tr. 368). When questioned whether she experiences side effects from her medications, she replied she gets drowsy and it causes her to take naps throughout her day. (Tr. 368-69).

The ALJ set forth Plaintiff's testimony referenced above in her decision, but stated Plaintiff's testimony concerning her impairments and their impact on her ability to work are not entirely credible in light of the medical history, the reports of the treating and examining practitioners, the degree of medical treatment required, and Plaintiff's own description of her activities and life style. (Tr. 18). Plaintiff argues the ALJ erred because the totality of the evidence, as reflected by the medical records, Plaintiff's subjective complaints, and description of her daily activities, as well as the number and strength of the medications prescribed to her, constitute the substantial evidence to overcome the ALJ's conclusion that Plaintiff was not fully credible. (Doc. 17, p. 13).

The ALJ must consider all of Plaintiff's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

18

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). It is sufficient to support a finding of disability when Plaintiff's subjective testimony is supported by medical evidence that satisfies the standard in this case.  Id.

Here, the ALJ determined Plaintiff's degenerative disc disease of the lumbar and cervical spine and myofascial pain disorder were severe impairments and therefore, Plaintiff has satisfied the first part of the test.  (Tr. 18).   As for the second part of the test, the ALJ noted "[t]he objective medical evidence of record does not establish the severity of impairments alleged by the claimant."  (Tr. 19).  However, the ALJ was then required to determine "whether [Plaintiff's] underlying medical condition could reasonably be expected to give rise to the alleged pain."  Geiger v. Apfel, No. 6:99-CV-12-ORL-18B, 2000 WL 381920 *7 (M.D. Fla. 2000).  This determination is a question of fact for the ALJ and in making such a determination, the ALJ must weigh the credibility of Plaintiff's testimony.

Where an ALJ decides not to credit a claimant's testimony about pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale v.

Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987).  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

The ALJ's articulated reasons for rejecting Plaintiff's credibility are inadequate. For instance, the ALJ took issue with Plaintiff's self prescribed pain remedy of lying down when she experiences pain.  The ALJ determined Plaintiff had never told her physicians that she needed to lie down to relieve her pain and that Plaintiff's physicians had never advised Plaintiff to lie down to relieve her pain.  (Tr. 18-19).  Even if true, this reasoning is not an adequate justification for rejecting Plaintiff's credibility because this statement neither weighs for or against Plaintiff's credibility as it is a reasonable and natural response for a person to lie down in an effort to relieve pain.  Nevertheless, the record shows that Plaintiff did tell at least one physician that lying down helped to relieve her pain.  (Tr. 198) (reporting to Health South in March 2001 that lying flat provides the most relief for her pain).  Moreover, the fact that no physician ever advised Plaintiff to lie down does not eviscerate the fact that lying down may very well help relieve Plaintiff's pain.

The ALJ next discounted Plaintiff's credibility because "[t]he medical evidence of record does not establish the severity of impairments alleged by the [Plaintiff]."  (Tr. 19). Although the ALJ acknowledged that Plaintiff had a history of injuries which caused low back, neck, and shoulder pain, she determined that since Plaintiff's cervical fusion, there is no evidence of a recurrent disc herniation or disc problem and that Plaintiff's shoulder pain had significantly improved since her shoulder surgery in 1995.  Id.  The ALJ further concluded that Plaintiff had significant relief following the steroid injections

administered by Dr. Vincenty.  Id.

This reasoning is also not supported by substantial evidence.  The medical records are replete with evidence that Plaintiff experienced severe pain in her shoulder, neck, and back from 1995 through 2002.  Plaintiff's pain management treating physician, Dr. Hussain, diagnosed Plaintiff with myofascial pain syndrome and chronic pain syndrome each time she was evaluated by him, and the records demonstrate she was evaluated by him on a regular basis from August 1999 through at least December 2003.  (Tr. 246-305).  Moreover, Dr. Hussain regularly commented that Plaintiff was experiencing significant pain and stated on several occasions that Plaintiff was seeking palliative treatment – treatment which aims to alleviate some of the pain a person experiences, as opposed to curing the pain. (See e.g. Tr. 292-94).  Additionally, Dr. Hussain, as well as Plaintiff's other physicians, regularly documented Plaintiff's pain at levels ranging from 6 to 8 out of 10.  (Tr. 224, 253, 263, 282 ,287-89, 298-99).

Contrary to the ALJ's finding that Plaintiff's pain had improved significantly after her shoulder surgery in 1995, the medical evidence demonstrates that Plaintiff continued to complain of significant pain in her shoulder and neck region.  (Tr. 190-192, 208, 219, 233, 248, 255, 276, 282, 290-91, 295, 300, 303, and 305).  Similarly, the ALJ's finding that Plaintiff had significant relief following the steroid injections was contradicted by Dr. Hussain's statement that the steroid injections provided Plaintiff only short-lived relief.  (Tr. 299).

The ALJ's next reason for discrediting Plaintiff's testimony was that none of Plaintiff's treating sources indicated specific job-related limitations or restrictions on her activities and her pain was fairly well controlled by injections and medication.  (Tr. 20).

21

Again, however, these statements are not backed by the record evidence.  To the contrary, Plaintiff's pain management treating physician, Dr. Hussain, evaluated Plaintiff's RFC in April 2002 and specifically found Plaintiff incapable of working an eight-hour day.[7]  (Tr. 286).  The evidence also demonstrates Plaintiff's pain was only temporarily relieved by the injections she received and that she continued to experience pain, even while taking her medications.  In fact, Dr. Hussain continued to increase the level of Plaintiff's medications (Tr. 269-70) and the records demonstrate that although the medicines helped to limit Plaintiff's pain, Plaintiff continued to experience a significant amount of pain in her neck, shoulder, and back throughout her treatment with Dr. Hussain. (Tr. 246-305).

Finally, the ALJ opined that Plaintiff's activities of daily living are inconsistent with her allegations of disability.  (Tr. 22).  Notably, the ALJ found Plaintiff capable of caring for her own personal needs, eating out regularly, performing some household chores, maintaining regular social contacts with friends and family, walking and providing care for her dog, and watering her plants.  (Tr. 22).  The Court has considered Plaintiff's testimony during the hearing and finds the ALJ mischaracterized Plaintiff's testimony.  For instance, while Plaintiff admitted to being able to complete small loads of laundry and water her plants, she specifically noted that her family and friends come to visit her, and that her dog is an outside dog and does not require walks.  (Tr. 370-72).

---

[7] Contrary to this statement, the ALJ did in fact recognize that Dr. Hussain provided a residual functional capacity assessment which does not allow Plaintiff to work a full eight hour day. (Tr. 20).  She, however, rejected these findings as baseless.  Id.  Because Plaintiff argues the ALJ erred by failing to accord proper weight to the opinion of Plaintiff's treating physician, the Court will address this issue in the next section.

Regardless, the Eleventh Circuit has rejected the idea that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability. . . ." Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).

In sum, the ALJ did not articulate substantial reasons for discrediting Plaintiff's complaints of pain.  As such, this Court will remand this case with instructions for the ALJ to reconsider Plaintiff's complaints of pain, making sure to apply the proper standard as set forth by the Eleventh Circuit in Foote.  Specifically, the ALJ should determine whether Plaintiff's underlying medical conditions could reasonably be expected to give rise to her alleged pain, and should reconsider Plaintiff's credibility when making this determination.  If the ALJ again decides not to credit Plaintiff's testimony about her pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so.

### C.    The Treating Physician Analysis

On April 2, 2002, Dr. Hussain, Plaintiff's treating physician, opined Plaintiff was incapable of working a full eight-hour day and specifically noted that Plaintiff needed to change positions in less than one hour intervals with rest periods in between changing postures.  (Tr. 284).  Also, on September 26, 2005, Dr. Hussain filled out a physical capacity questionnaire on Plaintiff, which showed even greater restrictions on Plaintiff's physical abilities.  (Tr. 351-353).  The ALJ rejected Dr. Hussain's opinion that Plaintiff was not able to sit, stand, and/or walk for a full eight-hour work day.  (Tr. 20).  The ALJ found Plaintiff capable of performing sedentary work for an eight-hour day with an

allowance for change in positions between standing and sitting every hour.  (Tr. 22).[8] (Tr. 20).

Plaintiff argues the ALJ erred by failing to accord substantial evidence to the opinion of Dr. Hussain.  (Doc. 17, pp. 18-19).  Plaintiff notes that Dr. Hussain, her treating physician, was quite specific in his opinion that Plaintiff was limited by her incapacity to sit, stand, or walk for a full eight-hour day.  Id. at 19. The Commissioner responds that Dr. Hussain's RFC assessment is relevant, but not determinative, as it is an issue that is reserved for the Commissioner.  (Doc. 20, pp. 11-12).  Further, the Commissioner argues the ALJ provided a clear rationale for only accepting Dr. Hussain's assessment inasmuch as it was deemed consistent with the performance of sedentary work.  Id. at 12.  The Commissioner notes the state agency physicians' opinions, as well as a functional capacity evaluation from Health South, support the ALJ's conclusion that Plaintiff was capable of working an eight-hour day with changes in positions every hour.  Id.  Finally, the Commissioner asserts the ALJ properly noted that Plaintiff's activities suggest she was capable of performing sedentary work for an eight-hour day.  Id.

---

[8] The ALJ rejected Dr. Hussain's September 2005 opinion for the same reasons she rejected Dr. Hussain's April 2002 opinion, in addition to the fact that the 2005 opinion was provided almost three years after Plaintiff's date last insured.  (Tr. 20).  Because the Court is remanding this case based on the ALJ's failure to explain sufficient reasoning for discrediting Plaintiff's claims of pain and because the Court finds the ALJ should reconsider Dr. Hussain's opinion for the reasons expressed infra, the Court will not undertake a detailed analysis regarding this later opinion of Dr. Hussain.  On remand, however, the ALJ shall consider Dr. Hussain's 2005 opinion to determine whether it has any relevance to the severity of Plaintiff's condition before the expiration of her insured status.  See Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983) (noting medical evidence subsequent to the expiration of a claimant's insured status is relevant )(rev'd on other grounds).

An opinion from a treating physician, such as Dr. Hussain, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"[9] Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241.  20 CFR §404.1527

When an ALJ determines a treating physician's opinion does not warrant controlling weight, the ALJ must weigh the medical opinion based on the following six factors: the length of the treatment relationship and the frequency of the examinations; the nature and extent of the treatment relationship; the medical evidence supporting the opinion; consistency with the record as a whole; specialization in the medical issues at issue; and any other factors which tend to support or contradict the opinion.  Hurley v. Barnhart, 385 F. Supp. 2d 1245, 1255 (M.D. Fla. 2005) (citing 20 C.F.R. § 404.1527(d)).  It is unclear if the ALJ took any or all of these factors into account, as she did not

---

[9] The Commissioner argues Dr. Hussain's opinion is relevant but not determinative.  The Commissioner is correct, but Dr. Hussain's opinion is still entitled to controlling weight, absent good cause otherwise.  Notably, Dr. Hussain's RFC assessment contains his medical source opinion.  A medical source opinion is distinguished from the RFC assessment described in 20 CFR 404.1545 & 404.1546.  The difference is that a medical source opinion is a source's opinion based on his or her own knowledge.  SSR 69-5p.  If this opinion is a treating source opinion, it is entitled to controlling weight unless good cause is shown otherwise.  An adjudicator's RFC assessment, on the other hand, is the adjudicator's "ultimate finding based on a consideration of the medical source's opinion and all other evidence in the case record about what an individual can do despite his or her impairment(s)."  Id.  This final assessment is a decision reserved for the Commissioner.  Id.

expressly assess any of these factors in her decision, absent a conclusory statement that Dr. Hussain's opinion was inconsistent with the medical and other evidence of record.

In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly articulate the reasons for so doing. <u>Phillips</u>, 357 F.3d at 1241. Here, the ALJ found Dr. Hussain's assessment of Plaintiff's incapacity to work a full eight-hour day was inconsistent with the record and that there was no basis for his findings. The ALJ cited Plaintiff's acknowledged relief from treatment and daily activities as evidence that the claimant is capable of sedentary work during an eight-hour day. (Tr. 20). Additionally, the ALJ cited the assessment of Plaintiff by the state agency physician, Dr. Brigety, as consistent with the objective medical and other evidence of records, although the ALJ added a few more limitations on Plaintiff's ability to work. (Tr. 21).

As stated <u>supra</u>, the Court finds the ALJ mischaracterized the pain Plaintiff experienced following injective treatments, as well as Plaintiff's capacity to perform daily activities. Moreover, the ALJ rejected Dr. Hussain's opinion without considering all of the evidence Dr. Hussain relied on when he concluded the Plaintiff's complaints of pain are substantiated by the objective evidence. Notably, Dr. Hussain referenced a previous RFC evaluation in his April 2, 2002 opinion as support for his finding that the objective evidence demonstrates that Plaintiff's condition could reasonably be expected to cause the degree of pain of which Plaintiff complained. This previous RFC evaluation is not in the record and the ALJ did not contact Dr. Hussain in an attempt to obtain any additional information on this report.

When additional information is needed to determine whether a plaintiff is disabled, the ALJ has the duty to recontact a treating physician to determine whether the information is available.  Here, the ALJ should have recontacted Dr. Hussain for clarification as to the bases for his opinion.  SSR 96-5P ("if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion"); Norman v. Apfel, 100 F. Supp.2d 1352, 1353-54 (N.D. Ga. 2000) (finding that remand was warranted when the ALJ failed to contact plaintiff's treating physician even though she needed additional evidence to determine whether Plaintiff was disabled).

The ALJ found the state agency physician's opinion consistent with the evidence. However, the opinion of reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight.  Ortega v. Chater, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996) (citing Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Swindle v. Sullivan, 914 F.2d 222, 226 n. 3 (11th Cir. 1990); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986)).  Moreover, the report of a non-examining physician does not provide the "good cause" required before the treating physician's opinion may be accorded little weight.  Bruet v. Barnhart, 313 F. Supp.2d 1338 (M.D. Fla. 2004).

The ALJ erred by failing to provide the good cause for rejecting Dr. Hussain's opinion that Plaintiff was not capable of working a full eight-hour day.  On remand, the ALJ should reconsider the weight accorded to Dr. Hussain's opinions and in doing so, should make every effort to recontact Dr. Hussain for clarification of the bases for his

27

opinions and to obtain his previous RFC evaluation which he made reference to in his April 2, 2002 report.  If the ALJ again determines Dr. Hussain's opinion is not entitled to controlling weight, she should clearly articulate the good cause on which she bases her decision.

### D.    Incomplete Hypothetical Questions

During the hearing, the ALJ posed various hypothetical questions to the VE in an effort to determine whether Plaintiff was capable of performing work that exists in the national economy.  Plaintiff argues the ALJ erred when she failed to include questions relating to Plaintiff's depression and anxiety symptoms, her need to change postures in less than one hour increments, and her limitations in pushing and pulling with her right shoulder.  Because the issues addressed <u>supra</u> in this order necessarily contribute to the ALJ's RFC and thus, also contribute to the substance of the hypothetical questions asked by the ALJ, the Court need not conduct a thorough analysis of this issue.  On remand, however, the ALJ shall reconsider Plaintiff's RFC in light of her other findings consistent with this opinion and if necessary, shall pose complete hypothetical questions, comprising of all of Plaintiff's impairments, to the VE.

### V.    CONCLUSION

For the foregoing reasons, the undersigned believes the Commissioner's decision is not supported by substantial evidence, nor is it decided according to the proper legal standards, and is therefore **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) reconsider Plaintiff's complaints of disabling pain, as well as Plaintiff's physicians' documentation of such

complaints, and if she decides to discredit such allegations, she should make sure to support such decision with substantial evidence;(2) reconsider the weight Dr. Hussain's opinion is entitled and in the event she accords it less than controlling weight, she should clearly articulate her reasons for doing so; (3) reconsider Plaintiff's RFC in light of her other findings consistent with this opinion and if necessary, shall pose complete hypothetical questions comprising of all of Plaintiff's impairments to the VE; and (4) conduct any further proceedings she finds necessary in light of any new findings.

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  See Bergen v. Commissioner of Social Security, 454 F.3d 1273, 1278, n.2 (11th Cir. 2006); Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida, this ___27th___ day of March, 2008.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record